# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **ERICSSON INC.** and **TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>**APPLE INC.,**<br><br>　　　　　Defendant. | CIVIL ACTION NO.2:15-cv-17<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (together, "Ericsson") file this Original Complaint against Apple Inc. ("Apple") and allege as follows:

## NATURE OF THE ACTION

1. For more than three decades, Ericsson has pioneered the development of the modern cellular network. Every major mobile network operator in the world buys solutions and/or services from Ericsson, and Ericsson manages networks that serve more than one billion subscribers globally. Forty percent of all mobile calls are made through Ericsson systems, and Ericsson's equipment is found in more than one hundred and eighty countries.

2. Ericsson is widely viewed as one of the leading innovators in the field of cellular communications. Due to the work of more than twenty-five thousand Ericsson research and development (R&D) employees, Ericsson's inventions are a valuable part of the fundamental technology that connects phones, smartphones, and other mobile devices seamlessly using cellular networks worldwide and provides increased performance and

new features for the benefit of consumers.  As a result of its extensive research and development efforts, Ericsson has been awarded more than thirty-five thousand patents worldwide.  Many of Ericsson's patents are essential to the 2G (GSM, GPRS, and EDGE), 3G (UMTS/WCDMA and HSPA), and/or 4G (LTE) telecommunication standards, all of which are used by Apple's products.

3. Ericsson has repeatedly committed to license its portfolio of patents that are essential to practice the 2G, 3G, and/or 4G LTE standards ("Essential Patents") on terms that are fair, reasonable, and non-discriminatory (FRAND).  Ericsson's FRAND commitment is set forth in its intellectual property right (IPR) licensing declarations to the European Telecommunications Standards Institute (ETSI) in accordance with ETSI's IPR Policy.  Consistent with its FRAND commitment, Ericsson has widely licensed its portfolio of Essential Patents on a global basis in over one hundred agreements with members of the telecommunications industry who have agreed to pay royalties for a global portfolio license on FRAND terms to Ericsson.  Ericsson reinvests much of the licensing revenue it receives under these global agreements into inventing future generations of standardized telecommunication technologies, spending around five billion dollars annually on research and development.

4. The proliferation of smartphones, such as the iPhone, and their popularity, is based on the development of the 2G, 3G, and especially 4G LTE communication standards.  Without LTE technology and Ericsson's inventions incorporated therein, smartphones and other mobile devices would not be able to provide the constant on-the-go access to video, streaming media, and gaming that we are accustomed to today.  Furthermore, the widespread adoption of large screen smartphones and corresponding

applications are dependent on the performance that LTE technology and Ericsson's inventions provide.

5. Apple was previously globally licensed to Ericsson Essential Patents in 2008, but its license has now expired.

6. During the past two years of negotiations for a renewal agreement between the parties, Ericsson has extended multiple offers to Apple to renew its portfolio license on FRAND terms. These negotiations have been unsuccessful for the simple reason that Apple refuses to pay a FRAND royalty for a license to Ericsson's Essential Patents. Apple's refusal to pay a FRAND rate gives it an unfair competitive advantage over its competitors who have licensed Ericsson's global portfolio of patents on FRAND terms.

7. Apple declined to accept Ericsson's proposal to arbitrate regarding Ericsson's Essential Patents.

8. Since its license has expired, Apple infringes, contributes to the infringement of, and/or induces infringement of Ericsson's Essential Patents.

9. During the course of the companies' years of negotiations for a renewal agreement, Apple wrongfully accused Ericsson of violating its commitment to license its Essential Patents on terms that are fair, reasonable, and non-discriminatory. Apple makes its accusations despite the fact that Apple's competitors, and most of the other participants in the mobile telecommunications industry, have licensed Ericsson's portfolio of patents on comparable global FRAND licensing terms. In reality, Apple seeks to parlay its commercial success into licensing rates that are much more favorable than those its competitors pay for a license to the same Ericsson patents.

10. Ericsson has, therefore, filed this suit against Apple to obtain a declaration that it has complied with its FRAND commitment and offered Apple a global portfolio license under its Essential Patents on FRAND terms.

## THE PARTIES

11. Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

12. Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

13. Ericsson has a long history of innovative technical contributions, including the Ericsson Essential Patents. In addition, some of Ericsson's other accomplishments include:

- in 1878, Ericsson sold its first telephone;
- in 1977, Ericsson introduced the world's first digital telephone exchange;
- in 1981, Ericsson introduced its first mobile telephone system, NMT;
- in 1991, Ericsson launched 2G phones on the world's first 2G network;
- in 1994, Ericsson invented Bluetooth;
- in 2001, Ericsson made the world's first 3G call for Vodafone in the UK; and
- in 2009, Ericsson started the world's first 4G network and made the first 4G call.

14. Ericsson's innovation continues today and into the future. Ericsson envisions a connected future, in which there will be more than three billion users and more than fifty billion connected devices, all of which will require better networks and greater capacity. To that end, Ericsson has more than twenty-five thousand employees devoted to R&D, much of which is focused on wireless and radio access technology. Ericsson's efforts have resulted in technological advances that provide faster data speeds, improved voice quality, and better network performance. In particular, Ericsson's major

contributions to the current 4G LTE standard ensures that the 4G standard delivers more value to smartphones like Apple's iPhone than 2G or 3G standards, by enabling better performance and new features, which result in new and richer applications for Apple's customers. Ericsson's technological advances do not come cheaply or easily, as Ericsson invests approximately 15% of its budget in research and development costs annually.

15. Defendant Apple is a California corporation, with its principal place of business at 1 Infinite Loop, M/S 38-3TX, Cupertino, California 95014. Apple designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States smartphones, tablets, and other mobile computing devices that operate over various cellular standards, including 2G, 3G, and 4G. Apple's devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Ericsson's claims for declaratory judgment that it has not breached its FRAND commitment under 28 U.S.C. § 1332.

17. The amount in controversy exceeds $75,000.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391.

19. This Court has personal jurisdiction over Apple. Apple has continuous and systematic business contacts with the State of Texas. Apple, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Apple, directly and

through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its products and/or services compliant with the 2G, 3G, and/or 4G cellular standards into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.  Apple has also directed communications in connection with its negotiations with Ericsson into the Eastern District of Texas.

## BACKGROUND

**A.    ETSI, Standard Essential Patents, and the FRAND Commitment.**

20.    In the telecommunications industry, global standards are fundamental to ubiquitous connectivity and enable any company – even a company like Apple with no history in the wireless industry – to enter the market and sell smartphones.

21.    The 2G, 3G, and 4G cellular standards comprise a lengthy set of documents that specify complete "blueprints" for cellular networks and phones. Developing these standards requires much more than merely adopting existing technology to specify how different products will communicate.  Instead, the standardization process more closely resembles a competition among industry players to find novel solutions to the technical challenges underlying the new standards, such as increased data rates, reduced latency, reliability, and security.

22.    The 2G, 3G, and 4G cellular standards hugely benefit consumers and the competitive economic conditions in the Unites States.  More choices are available to consumers because the standards are available for anyone to implement, even companies

outside of the standard body's membership. Therefore, the market is accessible for new players to launch competitive products without any investment in the multi-year process necessary to develop the enabling standards. Many new vendors – like Apple – have taken advantage of the system and emerged as market leaders, even though they had never invested in its development.

23. These benefits have created remarkable growth in the cellular industry over the last two decades, providing affordable communication to billions of people worldwide. The U.S. government agrees: "Voluntary consensus standards serve the public interest in a variety of ways, from helping protect public health and safety to promoting efficient resource allocation and production by facilitating interoperability among complementary products."[1]

24. ETSI is an independent, non-profit standard setting organization (SSO) that produces globally-accepted standards for the telecommunication industry. ETSI currently has more than 750 members from more than sixty countries across five continents, including Ericsson and Apple. In addition to its own activities, ETSI is also one of six SSOs that are organizational partners of the Third Generation Partnership Project (3GPP) which maintains and develops globally applicable technical specifications for the 2G, 3G, and 4G mobile systems. Together, ETSI and its members have developed open standards that ensure worldwide state-of-the-art performance and interoperability between networks, devices, and network operators for a number of services and applications.

---

[1] U.S. Department of Justice and U.S. Patent & Trademark Office, POLICY STATEMENT ON REMEDIES FOR STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY F/RAND COMMITMENTS at 2-3.

25. Many SSO members, including Ericsson, own IPRs related to technologies standardized by SSOs. ETSI has developed and promulgated an IPR Policy. The ETSI IPR Policy is intended to strike a balance between the need for access to open standards by users of technology on one hand, and ensuring that an "IPR owner is adequately and fairly rewarded for the use of [its] IPRs in the implementation of [the] standard and technical specifications"[2] on the other hand. ETSI requires its members to disclose patents that are "essential to practice" its standards or technical specifications. The ETSI Guide on IPRs states "the ETSI IPR Policy seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs."[3]

26. Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR." The ETSI Guide on IPR further states "an 'essential IPR' is an IPR which has been included within a standard and where it would be impossible to implement the standard without making use of this IPR. The only way to avoid the violation of this IPR in respect of the implementation of the standard is therefore to request a license from the owner."[4]

27. The ETSI IPR Policy is governed by French law.[5]

---

[2] ETSI Rules of Procedure, Annex 6: ETSI IPR Policy, 19 November 2014, available at http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (last visited January 13, 2015).
[3] ETSI Guide on IPR, 19 September 2013, Version adopted by Board #94, available at http://www.etsi.org/images/files/IPR/etsi-guide-on-ipr.pdf (last visited January 13, 2015).
[4] *Id.*
[5] ETSI Rules of Procedure, Annex 6: ETSI IPR Policy, 19 November 2014, available at http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (last visited January 13, 2015).

28.     Patent licensing provides a necessary incentive for innovators to direct research and development resources to standardization efforts.  Receiving a return on this investment is a prerequisite for the underlying business models of standard-setting participants like Ericsson.  FRAND licensing has been recognized by the U.S. PTO and DOJ as a necessary incentive for standardization:

> patent holders that focus on licensing their inventions benefit from an expanded source of revenues. These incentives encourage patent holders to contribute their best technology to the standardization process. [. . .] the United States continues to encourage systems that support voluntary F/RAND licensing—both domestically and abroad—rather than the imposition of one-size-fits-all mandates for royalty-free or below-market licensing, which would undermine the effectiveness of the standardization process and incentives for innovation.[6]

**B.     The Current Licensing Dispute.**

29.     Ericsson is uniquely positioned as a leader in the development of standards for all major mobile communication systems.  Its active participation and leadership in global standardization organizations, and its commitment to open and innovative technology standards, enable Ericsson to play a key role in shaping standards for future technologies.

30.     As a result, Ericsson owns patents that are, and remain, essential to practice the GSM, GPRS, EDGE, WCDMA, HSPA and/or LTE standards.  Ericsson has declared to ETSI, and to 3GPP via ETSI, that it is prepared to grant licenses to its Essential Patents on FRAND terms and conditions consistent with Ericsson's FRAND commitment, as set forth in its IPR licensing declarations to ETSI.

---

[6] U.S. Department of Justice and U.S. Patent & Trademark Office, POLICY STATEMENT ON REMEDIES FOR STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY F/RAND COMMITMENTS at 5-6.

31. Apple and Ericsson previously entered into a license agreement that is now expired, yet Apple continues to sell products that comply with the cellular standards without a license from Ericsson.

32. Years before Apple's license expired, the parties began negotiations to renew the license to Ericsson's 2G and 3G Essential Patents. Over the course of many months, representatives from Ericsson and Apple met on numerous occasions to discuss licensing terms. Throughout the parties' negotiations, Ericsson offered to globally license Apple under its portfolio of 2G, 3G, and 4G standard essential patents on FRAND terms, but Apple refused Ericsson's offer.

33. Ericsson and Apple engaged in technical meetings regarding Ericsson's Essential Patents before Apple discontinued such meetings in favor of business negotiations. Apple also declined to accept Ericsson's proposal to arbitrate regarding Ericsson's Essential Patents.

34. Ericsson's offers to Apple contemplate a global license to all of Ericsson's Essential Patents. The parties have not exchanged any offers or requests to license individual patents; nor has Apple ever made a request for Ericsson to provide a license offer on a patent-by-patent basis. This is consistent with Ericsson's extensive licensing experience as well as standard industry practice. Licensing portfolios of standard-essential patents on a worldwide basis, rather than individual patents on a country-by-country basis, is the most efficient accommodation for licensing large and dynamic portfolios of standard-essential patents, such as those owned by Ericsson, and it fulfills the FRAND commitment made by the IPR owner.

35. The parties' licensing negotiations have been unsuccessful because Apple refuses to pay a FRAND royalty corresponding to those paid by its competitors for Ericsson's Essential Patents. Apple fails to honor the fact that FRAND licensing is a two-way street, requiring not only that the licensor is fair and reasonable in providing licensing terms, but also that the licensee negotiates in good faith and accepts FRAND terms when they are offered.

36. During negotiations, Apple has accused Ericsson of violating its FRAND commitment through its offers to Apple. Ericsson disagrees, and requests that the Court declare that Ericsson has complied with its FRAND commitment and offered Apple a license on FRAND terms.

## **DECLARATORY JUDGMENT OF NO BREACH OF FRAND COMMITMENT**

37. Ericsson owns patents essential to the GSM, GPRS, EDGE, WCDMA, and LTE standards. Apple infringes Ericsson's Essential Patents and does not have a license to practice such patents.

38. Ericsson, as the owner of patents that are essential to ETSI standards, has voluntarily declared that it will grant licenses to companies, including Apple, on terms that are fair, reasonable, and non-discriminatory, in compliance with the ETSI IPR Policy. This declaration forms a contract under French law to which Apple claims to be a third party beneficiary.

39. There is a dispute between Ericsson and Apple concerning whether Ericsson's offers to Apple for a global license to Ericsson's Essential Patents complied with Ericsson's commitment to license its Essential Patents on terms and conditions consistent with Ericsson's IPR licensing declarations to ETSI and ETSI's IPR Policy.

Apple has asserted that Ericsson has failed to offer a license under Ericsson's Essential Patents to Apple on terms that are FRAND.  There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

40. Ericsson requests a declaratory judgment that Ericsson's global license offers complied with its FRAND commitment, as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws, during its negotiations with Apple.

41. Ericsson requests that the Court declare that Ericsson has complied with its contractual obligations under its FRAND commitment as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws.

## **DEMAND FOR JURY TRIAL**

Ericsson hereby demands a trial by jury on its declaratory judgment claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A. Adjudge and declare that Ericsson complied with its FRAND commitment, as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws, in its negotiations with Apple in regard to a global license to Ericsson's Essential Patents;

B. Adjudge and declare that the terms and conditions for a global license to Ericsson's Essential Patents offered by Ericsson to Apple are consistent with Ericsson's FRAND commitment, as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws; and

C. Award such other relief as the Court may deem appropriate and just under the circumstances.

Dated: January 14, 2015　　　　　　　　　　Respectfully submitted,

**MCKOOL SMITH, P.C.**

By: */s/ Douglas A. Cawley*
Douglas A. Cawley, Lead Attorney
Texas State Bar No. 0403550
dcawley@mckoolsmith.com
Mike McKool, Jr.
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4000
Telecopier:  (214) 978-4044

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
McKool Smith P.C.
300 W. Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
ERICSSON INC. and
TELEFONAKTIEBOLAGET LM
ERICSSON**